BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
PATRICK D. KIBBE (Cal. Bar No. Pending)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6482
     E-mail:   patrick.kibbe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-mj-6733 |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN SUPPORT OF APPLICATION FOR REVIEW OF RELEASE ORDER |
| v. | |
| ISAI CARRILLO, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Patrick D. Kibbe, hereby files its Motion in Support of Application for Review of Release Order to the duty District Court Judge under 18 U.S.C. § 3145.

This motion is based upon the attached memorandum of points and authorities, the Application for Review of Order Setting Conditions of Release filed November 3, 2025, the files and records in this case, and such further evidence and argument as the Court may permit.

On October 30, 2025, government counsel conferred with defense counsel, Claire Kennedy, about this Application.  Defense counsel will not stipulate to defendant's detention.

Dated: November 3, 2025       Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

     /s/
PATRICK D. KIBBE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Isai Carrillo is charged by complaint with conspiracy to impede and injure federal officers, in violation of 18 U.S.C. § 372.  As detailed in the complaint, Defendant and his sister, co-defendant Virginia Reyes ("Reyes"), were members of an organization called "VC Defensa."  Part of the mission of VC Defensa was to disrupt and impede federal officers from enforcing immigration laws.  That is exactly what Defendant did, including by participating in a violent ambush of government vehicles on July 10, 2025 in which the Defendant threw large rocks at government vehicles while his sister blocked the government vehicles with her own.



Complaint at 20.  Defendant is identified in the Complaint as Subject 4.  Reyes is identified as Subject 1, and Reyes' vehicle is identified as Subject Vehicle 1.

As a result of the ambush, at least four government vehicles were damaged and a federal contract employee was injured when a rock smashed through her window, shattering the glass and striking her. This ambush was just one incident in an ongoing conspiracy that has and will continue to put law enforcement in danger.

This is not Defendant's first charge for violent conduct. Defendant has previous convictions for (1) malicious mischief to vehicle; (2) possessing a switchblade in a vehicle; and (3) assault. Defendant also has previous arrests including for (1) disturbing the peace; (2) transporting aliens; (3) battery; (4) possessing a switchblade in a vehicle; (5) vandalism; and (6) carrying a concealed dirk or dagger. As the charges in this case demonstrate, Defendant has not been deterred from continuing this type of conduct.

On October 29, 2025, law enforcement attempted to execute arrest warrants for Defendant and Reyes, and a search warrant at their shared residence. At approximately 5:15 am, Reyes posted on social media that the "Feds" had their house surrounded and to come help. Both Defendant and Reyes went out to the back alleyway. Defendant was arrested, while Reyes made good on her escape by fleeing to a car that pulled up and drove away.[1]

Now, both Defendant and Reyes have been released to resume living together. Here, the Magistrate Judge ordered Defendant released on a $10,000 unsecured bond, location monitoring, and a

---

[1] Reyes self-surrendered approximately 12 hours later after the Government counsel spoke with counsel for Reyes. Reyes made her initial appearance on October 30, 2025 and was released on bond with conditions. The Government is appealing Reyes' pretrial release as well.

2

curfew. The government appeals his release to the duty District Court judge under 18 U.S.C. § 3145.

Defendant should be detained. The $10,000 unsecured bond and location monitoring imposed by the Magistrate Judge will not reasonably assure his appearance and the safety of the community, nor will any additional conditions of release. The very purpose of Defendant's conduct is to flout the lawful operation of federal law. To further his conspiracy, Defendant has shown his willingness to commit violent acts and destroy property, consistent with his prior criminal history. Defendant has also communicated with and encouraged others to do the same. While Defendant has community ties, it is those same community ties that helped effectuate the conspiracy in this case and co-defendant's flight from their shared residence as both went out the back of their house when law enforcement attempted to arrest them. The release conditions imposed by the Magistrate Judge do not mitigate these risks. Accordingly, this Court should detain Defendant.

## II. STATEMENT OF FACTS

### A. Defendant Charged by Criminal Complaint with Conspiracy to Impede and Injure Federal Officers

On October 28, 2025, Defendant was charged by complaint with conspiracy to impede and injure federal officers, in violation of 18 U.S.C. § 372. The Complaint details the ongoing nature of the conspiracy, including Defendant encouraging, communicating with, and coaching Reyes on how to effectively impede law enforcement, and participating in a violent assault on July 10, 2025. Details of Defendant's conduct from the Complaint include the following.

On June 20, 2025, Reyes texted Defendant a picture of a plastic shield with the words "ICE OUT!!" Complaint at 28. Defendant responded, "Dope Buy some laser pointers green ones". Id. As the Complaint affiant explained, green laser pointers have been used to shine in the eyes of federal officers during recent civil disturbance events related to immigration protests. Id.

On June 21, 2025, Defendant messaged Reyes, "Pick me up tomorrow". Reyes stated, "Pick you up for?". Defendant replied, "To bug the ice agents!!!". Reyes stated, "With your record we'll both get arrested". Id. at 30.

On July 10, 2025, Defendant worked in concert with others to assault federal vehicles and officers. On that day, agents were executing federal search warrants on locations including a business known as the Glass House Farms in Ventura County, California. Id. at 3. Before the enforcement operations commenced, agents determined that the operation was compromised earlier than expected due to social media posts. During the search warrant enforcement operation, numerous protestors arrived in and around the area of the Glass House Farms. Some of the protestors were members of or associated with the organization "VC Defensa," which posted on social media to its members to go to the Glass House Farms. Id.

VC Defensa is an organization that operates and manages a "Rapid Response Network" ("RRN"). An RRN is comprised of several volunteer members who mobilize in vehicles to follow, chase, agitate and impede federal agents and their operations so that immigration arrests are unsuccessful. The VC Defensa RRN members also conduct surveillance of DHS office buildings and alert the community to the presence of federal agents within their neighborhoods. Id.

4

During the Glass House Farms enforcement operation, protestors, including VC Defensa members, built a roadblock using farm equipment at the primary entrance/exit to the Glass House Farms. Due to the roadblock, federal law enforcement vehicles used an alternate exit via a dirt service road onto Wood Road to leave the location. Id. at 4. When Government vehicles attempted to exit onto Wood Road and travel north, protestors, including VC Defensa members, created a chokepoint and ambush of the vehicles. Specifically, at least two vehicles and several individuals, including one with a bicycle, attempted to block the Government vehicles from exiting. Meanwhile, other individuals threw large rocks at the vehicles. Id.

Defendant (Subject 4) played a main role in that assault by hurling rocks at Government vehicles while Reyes (Subject 1) blocked the Government vehicles from exiting with her vehicle (Subject Vehicle 1). Following the assault, Defendant got into Reyes' vehicle. See Id. at 6-22.



**Defendant throwing rocks at Government vehicle.** Id. at 20.

5



Defendant throwing rocks at Government vehicle.  Id.



Defendant throwing rocks at Government vehicle.  Id. at 22.



Defendant getting into Reyes' vehicle following assault.  Id.

In total, at least four Government vehicles suffered damage due to being struck by rocks, and a federal contract employee was injured as she was struck by a rock that smashed through her window. Id.

Defendant did not stop there. On July 30, 2025, Defendant instructed Reyes on how to more effectively impede law enforcement vehicles, including by putting a person in risk of being hit by a vehicle.

> Defendant: Tail gate closer so they won't get between you any the other vehicles
>
> Reyes: They tend to reverse and break check
>
> Defendant: Nah don't let them get the chance ... What you need is someone with a bike ... Don't give them the opportunity to get between you them...
>
> Reyes: So they can get hit and go flying
>
> Defendant: It's a strategic counter defense

Id. at 29-30. As described above and in the Complaint, during the July 10, 2025 incident, Reyes used her vehicle to impede law enforcement and another subject did the same with his bicycle, while Defendant threw rocks at the Government vehicles.

For his conduct, Defendant was charged by criminal complaint on October 28, 2025 for conspiracy to impede and injure federal officers, in violation of 18 U.S.C. § 372.

**B.   Arrest and Search Warrant Execution on October 29, 2025**

On October 29, 2025, law enforcement attempted to execute arrest warrants for Defendant and Reyes, and a search warrant at their residence. At approximately 5:15 am Reyes posted on social media that the "Feds" had their house surrounded and to come help. Defendant and Reyes went out to the back alleyway. Defendant was arrested, while Reyes made good on her escape by fleeing to a car

that pulled up and drove away. Reyes self-surrendered approximately 12 hours later.

### C. Detention Hearing on October 29, 2025

Defendant made his initial appearance on October 29, 2025 before the Honorable Jacqueline Chooljian and a detention hearing was held. The government moved for detention based on the risk of flight and danger to the community. Judge Chooljian rejected the government's request for detention and ordered that Defendant be released on a $10,000 unsecured bond without surety, location monitoring, a curfew, and other bail conditions.

## III. ARGUMENT

### A. Standard of Review

Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., the Court reviews a magistrate judge's detention order de novo. United States v. Koenig, 912 F.2d 1190, 1191 (9th Cir. 1990); 18 U.S.C. § 3145(b). The Court must therefore determine "whether any condition or combination of conditions . . . will reasonably assure the appearance of [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. See 18 U.S.C. § 3142; United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991). Moreover, "[t]here are no formal evidentiary rules; the rules concerning admissibility of evidence in criminal

8

trials are inapplicable. . . . [and] [t]he Court may proceed based on proffer and hearsay." United States v. Possino, No. CR 13-00048-SVW, 2013 WL 1415108, at *2 (C.D. Cal. Apr. 8, 2013) (citing Winsor, 785 F.2d at 756).

The Court considers four factors in determining whether the pretrial detention standard is met: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including family and community ties and past criminal conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); Winsor, 785 F.2d at 757.

**B.  The Nature and Circumstances of the Offense are Serious**

Defendant's conduct is brazen. Defendant has conspired with others and acted to mount a full-on assault of law enforcement. While any assault is serious, Defendant's conduct is of particular concern because its very purpose is to undermine the rule of law. Because Defendant disagrees with the enforcement of laws passed by Congress, including the execution of court-ordered search warrants, Defendant ambushed Government vehicles and assaulted federal officers on July 10, 2025, and conspired with others to impede officers on other occasions. The threat of Defendant's vigilantism should not be overlooked by the Court, and the nature and circumstances of this offense weigh in favor of detention.

//
//
//

**C.   Defendant's History and Characteristics Weigh in Favor of Detention**

Defendant has previous convictions and arrests for relevant and concerning conduct. In 2013, Defendant was convicted of Malicious Mischief to Vehicle, for which he received three years of probation. Pretrial Services Report (PSR) at 3. In 2018, Defendant was convicted of Possessing a Switchblade in a Vehicle, for which he received 12 days of confinement and one year of probation. Id. In 2019, Defendant was convicted of Assault, for which he received nine days of confinement and three years of probation. Id. While these convictions were classified as misdemeanors, the fact that they are similar to the offense in this case demonstrates that Defendant has not been deterred from this type of conduct.

In addition, Defendant has numerous arrests for similar conduct.

- In 2009, Defendant was arrested for disturbing the peace.
- In 2010, Defendant was arrested for transporting aliens.
- In 2016, Defendant was arrested for battery.
- In 2019, Defendant was arrested for possessing a switchblade in a vehicle.
- In 2021, Defendant was arrested for vandalism less than $400
- In 2024, Defendant was arrested for carrying a concealed dirk or dagger.

While these arrests carry less weight than Defendant's convictions, they nonetheless evidence an ongoing pattern and concern that Defendant has and will continue to engage in the same type of conduct that will put the community at risk if he is released.

Indeed, even Reyes acknowledged that Defendant's criminal record would lead to their arrest. (Defendant: "Pick me up tomorrow". Reyes: "Pick you up for?". Defendant: "To bug the ice agents!!!". Reyes: "With your record we'll both get arrested". Complaint at 27.).

Thus, Defendant's history and characteristics demonstrate that he cannot be trusted to abide by the conditions of release. "As the Ninth Circuit specifically recognizes, conditions of release depend largely on the Defendant's good faith—or lack of it. If conditions can too easily be circumvented or manipulated, they are not effective." United States v. Petersen, 557 F. Supp. 2d 1124, 1131 (E.D. Cal. 2008) (citing United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008)). Here, a $10,000 bond, location monitoring, and a curfew do not reasonably assure that Defendant will not continue his conspiracy to impede and injure federal officers by communicating and coordinating with other VC Defensa members or engaging with officers himself. Defendant's record of damaging vehicles, assault, and carrying weapons, coupled with his ongoing efforts to impede and injure law enforcement, demonstrate that Defendant should be detained pending trial.

**D.   The Weight of the Evidence is Strong**

The weight of the government's evidence against an individual is also a consideration, albeit one of lesser importance. Motamedi, 767 F.2d 1403, 1408. The Court may consider whether the weight of the government's evidence increases the risk of non-appearance and/or the danger that defendant poses to the community. Id.

Here, the weight of the evidence is strong. Defendant is charged with conspiracy to impede and injure federal officers. As described above, there are numerous messages between Defendant and

11

1 his sister, Reyes, regarding their efforts to impede and injure law
2 enforcement officers as members of VC Defensa.  These messages firmly
3 establish both the purpose of the conspiracy to impede and injure law
4 enforcement officers and Defendant's membership in that conspiracy.
5     Moreover, the evidence is strong of Defendant's violent
6 participation in that conspiracy on July 10, 2025 at the Glass House
7 Farms.  Defendant is seen on video hurling rocks at law enforcement
8 vehicles while Reyes blocks the Government vehicles with her vehicle.
9 Following the assault, Defendant then gets in Reyes' vehicle.
10     In addition, Defendant and Reyes exchanged texts about the
11 incident.  On July 11, 2025, the day after the assault, Defendant
12 sent Reyes a video text message from an Instagram account that showed
13 them assaulting agents at the Glass House Farms.  Complaint at 31.
14 The next day, on July 12, 2025, Reyes messaged another person, "I
15 stopped giving a fuck I do what they do.  I'm surprised they haven't
16 arrested me.  But I know it's just a matter of time before the feds
17 comes knocking on my door . . . In the meantime imma keep doing what
18 I do".  Id. at 31-32.  Later that evening, Defendant texted Reyes,
19 "Manuel is in Oxnard I told him if anything happens to call you or me
20 it I have the kids".  Id. at 31.
21     There was also a photo on one of Reyes' phones from a restricted
22 fenced parking lot area at a DHS office located in Camarillo,
23 California that showed the blue Ford Expedition that Defendant
24 damaged while Reyes was blocking the exit onto Wood Road with her
25 vehicle.  The photograph stated in white lettering on top, "7/17/2025
26 The broken windshield and mirror still not fixed [emoji with smiling
27 face and tears]".  Id. at 34.
28



**Left: Photo of damaged blue Ford Expedition on Reyes' phone. Right: Photo of Defendant damaging the blue Ford Expedition while Reyes blocks the vehicle on July 10, 2025. Id. at 34.**

Thus, the weight of the evidence demonstrates that Defendant is an ongoing danger and flight risk, and should be detained.

**E.   Danger to the Community**

Defendant presents a significant danger to law enforcement and the community. Defendant is part of a concerted effort to impede and injure law enforcement. As detailed in the Complaint, this includes coordination and communication to disrupt law enforcement operations. Defendant told Reyes to purchase green laser pointers, which have been used to shine in the eyes of law enforcement. Id. at 29. Defendant told Reyes to tail gate closer to law enforcement vehicles to more effectively impede them. Id. at 29-30. And Defendant participated in a full-on ambush and assault of law enforcement vehicles by smashing their windows with rocks. As a result, at least four vehicles were damaged and at least one federal contract employee was injured. Defendant has demonstrated that he presents a clear and ongoing danger to law enforcement.

The fact that Defendant is targeting law enforcement should in no way diminish the danger he represents. Imagine if Defendant was targeting a particular racial, religious, or political group because he disagreed with them. And imagine as part of that conduct, Defendant actively conspired and communicated with others on how to harass members of that group, and then actively assaulted members of that group. That type of conduct would present a clear and ongoing danger. That is exactly the situation here.

Moreover, the danger posed by Defendant extends not just to law enforcement. As described above, Defendant suggested to Reyes to have someone with a bicycle participate in tailgating law enforcement vehicles to make it harder for law enforcement to conduct their operations. Reyes spelled out the implication: the bicyclist could "get hit and go flying." To be clear, Defendant was suggesting intentionally putting law enforcement in a position that might cause an accident that could kill or seriously injure a bicyclist. Defendant simply called this risk, "a strategic counter defense." Complaint at 29-30. Given the significant danger posed by Defendant, he should be detained.

**F.   Risk of Flight**

In addition to presenting a significant danger, Defendant also presents a serious risk of flight. As described above and in the Complaint, the very purpose of Defendant's conspiracy and conduct was to interfere with the orderly operation of federal law and impede federal arrests. Given Defendant's willingness to violate federal law for this purpose, Defendant's conditions of release would not be sufficient to reasonably assure his appearance in this case.

14

Moreover, while Defendant has demonstrated community ties, it is those very same community ties that could help effectuate his flight. As described above and proffered at the initial detention hearing, when law enforcement were outside of Defendant's residence preparing to execute the arrest and search warrants in this case, Reyes posted on social media that the "Feds" had their house surrounded and to come help. Defendant and his sister went out to the back alleyway. Defendant was arrested, while Reyes made good on her escape by fleeing to a car that pulled up and drove away. Thus, the record in this case also demonstrates the apparent ability to evade law enforcement based on Defendant's community ties. Therefore, Defendant should also be detained based on his serious risk of flight and nonappearance.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant the government's Application for Review of Order Setting Conditions of Release and order that defendant be detained pending trial.